IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMIL ELRAHMAN,
        PLAINTIFF,

v.

GERALD ROZUM ET AL.,
        DEFENDANTS.

CIVIL NO.

06-1336

**OPINION**

Pollak, J.                                                                                           May 16, 2007

      Now before the court is a *pro se* petition for a writ of habeas corpus filed by Jamil Elrahman, a.k.a. Jamil Mohd Abd-el-Rahman El-Ghazali, a state prisoner incarcerated in the Somerset State Correctional Institution. On October 31, 2006, Magistrate Judge Caracappa issued a report and recommendation ("R&R") recommending that Elrahman's petition be dismissed and a certificate of appealability not be granted. Docket # 13. Elrahman has filed a notice of objection to the R&R but has not identified anything specific with which he disagrees. For the reasons given below, I will approve and adopt Magistrate Judge Caracappa's R & R.

**(1) Overview**

Elrahman is serving an aggregate sentence of five to ten years of imprisonment for arson, intimidating a witness/victim, obstructing the administration of law and other government, and criminal conspiracy. Docket # 7, Appendix 1.  His minimum sentence expired on December 1, 2004 and his maximum sentence will expire on December 1, 2009. *Id.*  On November 2, 2004, the Pennsylvania Parole Board denied Elrahman parole, citing (1) his "version of the nature and circumstances of the offense(s) committed," (2) his "refusal to accept responsibility for the offense(s) committed," (3) his "lack of remorse for the offense(s) committed," (4) "reports, evaluations and assessments concerning [his] physical, mental and behavior condition history," and (5) his "interview with the hearing examiner and/or board member." *Id.* at 75.  On January 31, 2006, the Board denied him parole on the basis of his (1) "denial of the nature and circumstances of the offense(s) committed," (2) "refusal to accept responsibility for the offense(s) committed," (3) and "lack of remorse for the offense(s) committed." *Id.* at 77.  On September 18, 2006, the Board again denied him parole, citing (1) his "minimization/ denial of the nature and circumstances of the offense(s) committed," (2) his "lack of remorse for the offense(s) committed," (3) "reports, evaluations and assessments concerning [his] mental and behavior condition history that reflect[] ongoing risk to the community," and (4) the existence of detainers filed against [him]."[1] Docket # 15.

---

[1] In July of 2002, a jury of the Eastern District of Pennsylvania found Elrahman guilty of fraud. *United States v. El-Ghazali*, Criminal No. 01-349, Docket # 38.  In July of 2003, this court

Elrahman argues that these denials of parole were arbitrary and capricious and thus violated his due process rights. He also argues that the denials violated his Fifth Amendment right against self-incrimination, made binding on the Parole Board through the Fourteenth Amendment, insofar as they were based on his refusal to accept responsibility for his offenses of conviction. Docket # 1.

**(2) Discussion**

On February 25, 2005, Elrahman presented his due process and Fifth Amendment claims to the Pennsylvania Commonwealth Court. Docket # 7, Appendix 79. On June 21, 2005, the Commonwealth Court denied review on the basis that denials of parole are not appealable in the Pennsylvania courts. *Id.* at 96. Elrahman did not appeal this decision to the Pennsylvania Supreme Court. Instead, he filed the instant petition with this court. *Id.* at 100-105.

In *DeFoy v. McCullough*, 393 F.3d 439 (3d Cir. 2005), the Third Circuit, considering "[w]hether constitutional claims concerning the denial of parole in Pennsylvania, other than those premised upon the *ex post facto* Clause, must be presented to the state courts in order to satisfy the exhaustion requirement," *Id*. at 441, answered this question in the negative, *id.* at 445. Thus, Elrahman need not pursue additional

---

sentenced Elrahman to 18 months imprisonment which would run consecutively to his state sentence. Criminal No. 01-349, Docket # 54. On April 17, 2007, this court re-sentenced Elrahman to 16 months imprisonment, also consecutive to his state sentence. Criminal No. 01-349, Docket # 71.

3

remedies in the state courts before presenting his due process and Fifth Amendment claims to this court. I will therefore approve and adopt the Magistrate Judge's recommendation that Elrahman's claims be reviewed on the merits.

**i. Due Process Claim**

A convicted person has "'*no constitutional or inherent right . . . to be conditionally released before the expiration of a valid sentence.*'" *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981) (quoting *Greenholtz v. Neb. Penal Inmates*, 442 U.S. 1, 7 (1979). Nevertheless, as the Third Circuit has noted, states "may not sanction totally arbitrary parole decisions founded on impermissible criteria." *Burkett v. Love*, 89 F.3d 135, 139 (3d Cir. 1996) (quoting *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980)).

Elrahman alleges that he has been denied parole, in part, because of his decision to collaterally attack his sentence in federal court. *See* Docket # 1 at 9; *Al-Ghazali v. Beard*, Civil Action No. 04-2122. However, he has not offered any record evidence tending to support this claim. Nor has he offered any record evidence tending to establish that the Parole Board's actions were based on any other impermissible grounds. *Cf. Burkett*, 89 F.3d at 140 (identifying several impermissible grounds and citing supporting cases). Accordingly, I will approve and adopt the Magistrate Judge's recommendations as to Elrahman's due process claims.

**ii. Fifth Amendment Claim**

In *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 285 (1998), all nine members of the Supreme Court agreed that a prison inmate's Fifth Amendment privilege against self-incrimination would not be violated if, at an uncounseled "voluntary inmate interview . . . . he may be forced to answer questions; or, if he remains silent, his silence may be used against him." As the Court explained:

> Assuming . . . that the Authority will draw adverse inferences from respondent's refusal to answer questions—which it may do in a civil proceeding without offending the Fifth Amendment, [*Baxter v. Palmigiano*, 425 U.S. 308, 316-318 (1976)], we do not think that respondent's testimony at a clemency interview would be "compelled" within the meaning of the Fifth Amendment. It is difficult to see how a voluntary interview could "compel" respondent to speak. He merely faces a choice quite similar to the sorts of choices that a criminal defendant must make in the course of criminal proceedings, none of which has ever been held to violate the Fifth Amendment.

*Id.* at 286. In *McKune v. Lile*, 536 U.S. 24 (2002), this proposition was recognized with approval by a majority of the Court, with both the plurality and dissenters using it to guide their examination of the prison program at issue.[2]

*McKune* does not address whether the Fifth Amendment is violated when an

---

[2] Justice Kennedy, in his opinion for the plurality in *McKune v. Lile*, took note of the Court's observations in *Woodard* and concluded that the Fifth Amendment had not been violated because Lile's participation in the challenged sexual offender treatment program "was voluntary in the only sense necessary for [the Court's] present inquiry." *McKune*, 536 U.S. at 44 (plurality opinion). Justice Stevens—in a dissent joined by Justices Souter, Ginsburg, and Breyer—discussed *Woodard* with approval, but concluded that the Fifth Amendment had been violated because Lile "was directly ordered by prison authorities to participate in a program that requires incriminating disclosures, whereas no one ordered Woodard to do anything." *McKune*, 536 U.S. at 60 (Stevens, J. dissenting).

5

inmate's refusal to participate in a treatment program affects his eligibility for parole. *McKune*, 536 U.S. at 38 (plurality opinion) (noting that a loss of parole was not at stake). However, the First Circuit, applying the guidance set out in *Woodard* and *McKune*, has determined that the Fifth Amendment is not violated when a prison inmate's refusal to admit guilt results in a denial of parole. The First Circuit took the following considerations into account: (1) the "inmates d[id] not have a 'liberty right' to parole" under the relevant state and federal law; (2) the risk of incrimination arose from a program that was of a "voluntary nature (notwithstanding the consequences of nonparticipation)"; (3) "[s]ince parole involves relief from a penalty that has already been imposed—the full period of incarceration to which appellants were sentenced," the inmates "were not suffering a new or additional penalty by being denied parole." *Ainsworth v. Stanley*, 317 F.3d 1, 5 (1st Cir. 2002).[3] The Third Circuit, in a non-precedential opinion, has focused on similar considerations. *See Thorpe v. Grillo*, 80 Fed.Appx. 215, 219 (3d Cir. 2003) (unpublished).

    Neither the First Circuit's opinion nor the Third Circuit's non-precedential opinion is binding on this court. However, because I find the analysis in these opinions persuasive, I will apply their reasoning to the instant case.

---

[3] The First Circuit also observed that the denial of parole "was not entirely automatic." *Ainsworth*, 317 F.3d at 5; *see also id.* at 3 (noting that 2-3% of sex offenders received parole without participating in the challenged sex offender treatment program). However, that consideration is not at issue here given that Pennsylvania has neither demonstrated nor alleged that the Pennsylvania Parole Board ever paroles inmates who refuse to accept responsibility for offenses of conviction.

The parole proceeding that Elrahman has challenged is voluntary in nature. In addition, Elrahman's decision to remain silent risked no additional penalty as that concept has been understood by the First and Third Circuits. Thus, I conclude that the Pennsylvania Parole Board did not violate Elrahman's Fifth Amendment rights when part of its reason for denying him parole related to his refusal to accept responsibility for his offenses of conviction.[4] Accordingly, I will approve and adopt the Magistrate Judge's recommendations as to Elrahman's Fifth Amendment claims.

---

[4] This conclusion takes into account Elrahman's assertions that acceptance of responsibility at his parole hearing (1) could be used against him in his other pending habeas corpus petition (2) subject him to prosecution for the additional crime of perjury. *Cf. Woodard*, 523 U.S. at 285 (noting that Woodard had asserted "a substantial risk of incrimination since postconviction proceedings are in progress and since he could potentially incriminate himself on other crimes").

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMIL ELRAHMAN,<br>        PLAINTIFF,<br><br>v.<br><br>GERALD ROZUM ET AL.,<br>        DEFENDANTS. | CIVIL NO.<br><br>06-1336 |

**ORDER**

May ____, 2007

  And now, upon consideration of Jamil Elrahman's petition for a writ of habeas corpus; after review of the Report and Recommendation of United States Magistrate Judge Caracappa, Elrahman's objections, and the entire record; and for the reasons stated in the accompanying Memorandum, it is hereby ordered that:

  (1) The Report and Recommendation is **APPROVED** and **ADOPTED**.

  (2) Elrahman's petition for a writ of habeas corpus is **DENIED**.

  (3) A Certificate of Appealability is **NOT GRANTED**.

BY THE COURT:

/s/ Louis H. Pollak
Pollak, J.